## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **JEFFREY HERMAN** | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| **v.** | ) | **Case No.:** |
| | ) | **Division:** |
| **BANK OF THE WEST** | ) | |
| Serve Registered Agent: | ) | |
| The Corporation Company, Inc. | ) | |
| 112 SW 7th Street, Suite 3C | ) | |
| Topeka, KS 66603 | ) | |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW Plaintiff Jeffrey Herman ("Plaintiff"), by and through the undersigned counsel, and states and alleges as follows for his Complaint against the above-named Defendant:

## NATURE OF THE CASE

Plaintiff brings claims under the Family and Medical Leave Act ("FMLA"), and seeks all relief available including but not limited to, lost wages and benefits, including back pay and front pay and/or actual monetary damages, reinstatement, and liquidated damages, costs, and reasonable attorneys' fees.

Furthermore, Plaintiff, while an employee of Defendant Bank of the West, was subjected to unlawful discrimination based on gender and based on his association with a member of a protected class, and retaliation, based on Plaintiff's membership in a protected class, his association with a member of a protected class, and his opposition to unlawful acts based on his gender and his association with a member of a protected class.  Plaintiff's claims of discrimination

arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq*., and under the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101 *et. seq*.

Plaintiff seeks all available legal and equitable remedies for claims under Title VII of the Civil Rights Act of 1964, and the ADA, as amended, including back pay, front pay, compensatory damages, punitive damages, and attorneys' fees.

## PARTIES

1.  Plaintiff is a Kansas citizen residing in Overland Park, Johnson County, Kansas.

2.  Defendant Bank of the West is a for profit corporation organized in California and doing business in Kansas.  At all times relevant, Defendant Bank of the West, employed Plaintiff.

3.  Defendant is an employer within the meaning of Title VII, the ADA, and the Family Medical Leave Act.

4.  Defendant is an entity and thus incapable of acting on its own behalf and therefore acts through agents. Defendant is liable for the conduct of its agents, including but not limited to the individuals named herein, acting within the course and scope of their agency, their own negligence, the acts of their agents which they ratify, injuries incurred by agents' performance of non-delegable duties, and acts agents take by virtue of their agency or employment with Defendants.

## JURISDICTION AND VENUE

5.  Plaintiff submits to this Court's jurisdiction for the adjudication of his Complaint.

6.  This Court has personal jurisdiction over Defendants in that at all relevant times,

Defendants transacted business in the State of Kansas and committed the acts and omissions alleged herein in the State of Kansas within this District, and otherwise had a continuous and systematic presence in this District.

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 because Plaintiff's claims arise under federal law and involve a substantial federal question.

8.      Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District Court's territorial jurisdiction.

## ADMINISTRATIVE PROCEEDINGS

9.      On or about April 9, 2020, Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission. The Charge Number is 563-2020-01700. A copy is attached hereto as **Exhibit A and is incorporated herein by reference.**

10.     On November 12, 2020, the Equal Employment Opportunity Commission issued to Plaintiff a Notice of Right to Sue. A copy is attached hereto as **Exhibit B and is incorporated herein by reference**.

11.     This action has been filed within ninety days of Plaintiff receiving his Notice of Right to Sue.

## FACTUAL ALLEGATIONS

12.     Plaintiff was hired by Defendant Bank of the West on or about May 1, 2018.

13.     Defendant Bank of the West is a regional financial services company.

14.     Plaintiff worked for Defendants as a Private Client Advisor for Wealth Management (Vice President).  His title was Team Lead, Senior Client Private Advisor III, VP.

15.    In April of 2019, Plaintiff's wife gave birth to a baby boy.

16.    Prior to the birth of his son, Plaintiff let Bank of the West management know that he planned to take some paternity leave in order to bond with and assist with care of his son.

17.    Before taking his paternity leave, Plaintiff followed all of the proper Bank of the West procedures in terms of requesting leave, and filled out the required paperwork under Defendant's policies.

18.    Before going on paternity leave, Plaintiff's performance reviews indicated he was meeting Defendant's performance expectations.

19.    Plaintiff had completed his paternity leave by late July 2019.

20.    Immediately upon his return from leave, Plaintiff noticed a marked shift in Bank of the West management's attitude towards him.

21.    Management made comments to Plaintiff about the inconvenience of paternity leave, and showed general animosity towards Plaintiff's decision to take paternity leave.

22.    Plaintiff's Supervisor Chris Rea made a point of emphasizing to Plaintiff that his own performance bonus was negatively impacted by Plaintiff's paternity leave, and began targeting Plaintiff for unfair workplace criticism.

23.    Upon information and belief, female employees who took maternity leave were not treated with the same animosity, targeting, and unfair criticism that Plaintiff experienced.

24.    After his return from paternity leave, Chris Rea specifically denied Plaintiff the opportunity to partner with other team members on larger business opportunities, an option others in his position who had not taken paternity leave were allowed to pursue.

25.    Although Plaintiff was on approved leave for 12 weeks and was told that his

performance goals would be adjusted accordingly, the numbers and targets management shared with him did not always indicate a corresponding adjustment in his goals.

26.     After taking his paternity leave, management began to cancel mentoring and training meetings with Plaintiff, an action which he perceived as punishment for taking paternity leave, and as an attempt to set him up for failure.

27.     In the fall of 2019, after being subjected to hostility and unfair criticism, Plaintiff made an internal complaint with Bank of the West about his post-paternity leave treatment.  He called the Bank's 1-800 number for reporting HR concerns.  It took two to three days for someone to get back to him.  When he did hear back, he reported that he felt like his boss was targeting him for unfair criticism and was placing him under higher scrutiny than his similarly situated colleagues, and that he was doing so because Plaintiff took paternity leave. The HR representative taking the call was dismissive, and told him his boss would be told about the call.

28.     Plaintiff's complaint about his unfair treatment following paternity leave constitutes protected activity under Title VII, the ADA and the FMLA.

29.     By failing to conduct a prompt and thorough investigation of plaintiff's complaints, defendant exacerbated the hostile nature of plaintiff's workplace environment.

30.     Within days of making his Fall 2019 formal complaint to human resources regarding his post-paternity leave treatment, Plaintiff was place on a Performance Improvement Plan ("PIP"), an action which he perceived as retaliation for his complaint.

31.     After he was put on a PIP, Plaintiff asked why he was put on a PIP, given that he was in the position to have his best production quarter yet.  He was told it was based on production from prior quarters, including the quarters for which he was partially on paternity leave.

32.     Also, in the Fall/3rd quarter of 2019, Plaintiff specifically requested more support

and training opportunities in terms of partnering with middle market bankers.  His requests were summarily refused.   Upon information and belief, other similarly situated employees were provided these opportunities.

33.     In the Fall of 2019, Defendant also denied  Plaintiff the opportunity to work with and partner with other business bankers, while other similarly situated employees were allowed to do so.

34.     In late November 2019, despite his complaints and his efforts to work with others and communicate with management, Plaintiff was given a second PIP.

35.     The late November 2019 PIP contained a number of inaccuracies that Plaintiff tried to address with both management and human resources.

36.     After attempting to talk to his supervisor, Chris Rea, regarding the PIP, Plaintiff immediately called Defendant's human resources representative assigned to the PIP, and also sent her an e-mail.

37.     Defendant responded indicating that a representative would set up a time to talk the following week, but ultimately no meeting was scheduled with Plaintiff for over two weeks after he made his second formal complaint.

38.     Before Plaintiff could meet with human resources in late November 2019, his father had a medical emergency and required back surgery.

39.     Plaintiff had to help his father, and thus he was not able to attend the scheduled meeting.  He did however respond to Defendant's human resources representative and express that he was concerned that he was being targeted for discrimination and retaliation based on his taking paternity leave, providing detailed examples of same.

40.     After his father's medical emergency in late November 2019, Plaintiff reached out

to schedule FMLA leave in order to take care of his father.

41.     Plaintiff believed he was eligible for FMLA leave at the time, as his paternity leave had been leave granted under Defendant's paternity leave policy.

42.     Plaintiff went through Human Resources and Bank of the West's outside leave administrator to set up the leave, as his immediate supervisor, Chris Rea, was out of the office for two weeks.   The outside leave administrator initially told Plaintiff that he only had two weeks of FMLA available, but Bank of the West human resources later told him that he had three months of FMLA leave available, and that the outside administrator had made a mistake when they said he only had two weeks.

43.     Plaintiff's Supervisor Chris Rea then informed Plaintiff that he had no intention of approving his leave to take care of his father, and that Bank of the West changed its position, and that Plaintiff did not have available FMLA leave, despite initially saying that he did.

44.     From approximately December 3, 2019 to December 6, 2019, Plaintiff made numerous efforts to communicate with Bank of the West Human Resources, as well as his direct supervisor Chris Rea, as to his needs for leave.  He requested to be able to take his earned and accrued leave time of approximately two weeks. Rea denied that request, and Plaintiff took the request directly to Human Resources.  Plaintiff also told Human Resources that he believed he was being discriminated and retaliated against for taking paternity leave, and being treated unfairly given his father's serious health condition. Human Resources, despite Plaintiff's complaints of discrimination and retaliation, refused to review or challenge the denial of ability to use FMLA leave, paid leave, or discretionary leave of any kind, saying that leave requests were up to the discretion of a supervisor.

45.     Defendant was aware that Plaintiff was requesting leave in order to care for his

7

father, who suffered from a serious health condition.

46.     Defendant only allowed Plaintiff to use two days of the accumulated paid leave. Defendant's Human Resources department suggested that Plaintiff could request a 30-day unpaid personal leave, yet informed Plaintiff that such leave was solely at the discretion of his Supervisor. Despite Plaintiff's multiple complaints of discrimination and retaliation, Defendant made no efforts to evaluate Plaintiff's requests for leave nor his complaints.

47.     Plaintiff's Supervisor Chris Rea informed him by voicemail that he had no intention of allowing him to take a 30-day unpaid personal leave or in approving any additional leave, including Plaintiff's earned paid time off (PTO), in order for Plaintiff to care for his father and informed Plaintiff that he would be expected back at work, in the building.

48.     Upon information and belief, others who had not taken paternity leave were not denied consideration of leave, or consideration of vacation requests, leave requests, or FMLA leave, or consideration of unpaid discretionary leave in order to take care of a disabled family manner in the same manner that Plaintiff was denied leave.

49.     Upon information and belief, similarly situated female employees were allowed leave and/or flexibility in scheduling in order to care for family members.

50.     Due to the summary denials of all of his requests for leave, Plaintiff was given the impression that if he did not report to work, he would be terminated immediately.

51.     Because of its actions, Bank of the West deliberately rendered Plaintiff's working conditions intolerable.

52.     Defendant presented Plaintiff with a situation where he his only two options were to resign his position, or be terminated.

53.     As a result of Defendant rendering the working conditions intolerable, Plaintiff was

8

forced to quit his job.

54.     As all of Plaintiff's efforts to get even a short period of leave, whether through using earned PTO, FMLA, or personal leave, were flat-out denied by management and human resources, Plaintiff was constructively discharged from his employment.

55.     Plaintiff truly had no choice but to resign, as, given his licensing in the financial services industry, he could not risk the possibility of an official termination from employment, as a termination on his record could severely impact his ability to gain employment in the future.

56.     A reasonable person in Plaintiff's position would have believed he was being given a false choice between resigning his position, and being terminated.

57.     Defendant denied Plaintiff FMLA leave, unpaid discretionary leave, and the opportunity to use his paid days off to cover leave.

58.     The reasons given by Defendants for denying Plaintiff's request for leave were pretext to cover up their unlawful and retaliatory motives.

59.     Defendant constructively discharged Plaintiff from his employment.

60.     Defendant's conduct has caused Plaintiff degradation, humiliation, anxiety and emotional distress.

61.     Defendant's conduct has caused Plaintiff lost wages and benefits.

## COUNT I - VIOLATION OF FMLA, 29 U.S.C. § 2601 et seq

62.     Plaintiff incorporates by reference all preceding paragraphs and allegations as though fully set forth herein.

63.     Plaintiff was employed by Defendant, who, upon information and believe, is a covered employer.

64.     Defendant is an employer as defined by 29 U.S.C. § 2601 *et seq.* and 29 U.S.C.

9

§ 2611(4)(A)(iii), as it is an employer engaged in commerce or in an industry affecting commerce who employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar workweeks in the current or preceding calendar year.

65.     Plaintiff took paternity leave per company policy which was deemed, in whole or in part, FMLA leave, and which was, in whole, approved leave under Defendant's company policy.

66.     Plaintiff followed all proper procedures in applying for and receiving paternity/FMLA leave.

67.     Under the FMLA, Plaintiff was entitled to take leave for the care of and bonding with his newborn child.

68.     Plaintiff's father suffered from one or more medical conditions that required continuing treatment by health care providers, including the need to have back surgery.

69.     Under the FMLA, Plaintiff was entitled to seek leave to provide care and psychological comfort and reassurance to his father related to his father's back surgery.

70.     Defendant was aware of Plaintiff's need to provide care for his father.

71.     Plaintiff worked for the Defendant for at least 12 months.

72.     Plaintiff worked for Defendant at a location where 50 or more employees of Defendant worked within 75 miles.

73.     Plaintiff was employed by Defendant and worked more than 1250 hours in the 12 months prior to his request for FMLA leave that resulted in his constructive discharge.

74.     Plaintiff provided Defendant with timely notice of his need to take leave and he provided Defendant sufficient information that the leave was for a qualifying reason under the FMLA.

75.     In the 12 months preceding his constructive discharge, Plaintiff did not exceed 12

work weeks of FMLA leave.

76.     An eligible employee who takes FMLA leave is protected from retaliation or other harassing or discriminatory treatment.

77.     Plaintiff was initially told his FMLA to care for his father was approved, and then the approval was rescinded.

78.     The FMLA makes it unlawful for any employer to interfere with, restrain, or deny the exercise of any right provided by the FMLA.

79.     Plaintiff's employment was terminated, as he was constructively discharged as a consequence of his exercise of his rights under the FMLA and/or his attempt to exercise his rights under the FMLA.

80.     Defendant lacks good faith in its treatment of Plaintiff for exercising his rights under the FMLA.

81.     Defendant lacked good faith in summarily denying Plaintiff's request for leave of any kind in order to take care of his father.

82.     Defendant was not entitled to refuse or fail to provide Plaintiff any support or guidance with respect to his FMLA leave requests and/or eligibility for FMLA leave.

83.     Defendant deprived, interfered with, restrained, and/or denied Plaintiff of his rights under the FMLA, and/or Defendant retaliated against Plaintiff, by harassing, intimidating, and retaliating against Plaintiff, and constructively discharging him, in response to his use of and/or request for FMLA leave.

84.     Defendant's actions in violating the FMLA were willful.

85.     Plaintiff's constructive discharge under the circumstances set out herein was prohibited by the FMLA.

86.     Defendant's actions against and treatment of Plaintiff were those which a reasonable employee would have found materially adverse.

87.     The FMLA makes it unlawful for an employee's use of FMLA leave to result in the loss of any employment benefit which accrued prior to the start of the employee's FMLA leave.

88.     A causal connection exists between Plaintiff's protected FMLA activity and the adverse employment actions taken by Defendants.

89.     The reasons given by Defendant for the misconduct toward Plaintiff and his constructive discharge were pretext to cover up their unlawful and retaliatory motives.

WHEREFORE, Plaintiff prays the Court grant the following relief:

A.     Award Plaintiff damages in an amount equal to any wages, salary, employment benefits, and other compensation and/or benefits denied or lost to Plaintiff by reason of the violation of the FMLA including back pay and front pay, and interest on the same amounts;

B.     Award Plaintiff liquidated damages equal to the sum of the amount of any wages, salary, employment benefits, and other compensation denied or lost to Plaintiff and the interest on that amount;

C.     Award Plaintiff reasonable attorneys' fees, reasonable expert witness fees, and other costs of this action; and

D.     Award such other and further relief as to the court deems just and equitable.

## COUNT II- VIOLATION OF THE ADA – ASSOCIATIONAL DISCRIMINATION

90.     Plaintiff incorporates by reference all other paragraphs in this Complaint and restates and re-alleges the same.

91.     The Americans with Disabilities Act prohibits discrimination against an employee because of the known disability of an individual with whom the employee is known to have a relationship or association.  42 U.S.C.A. § 12112(b)(4).

92.     Plaintiff was qualified for his position.

93.     Defendant knew at the time that they took the adverse employment actions against Plaintiff that he was associated with a disabled individual.

94.     Plaintiff was subjected to adverse employment actions, and ultimately, constructive discharge.

95.     Plaintiff's constructive discharge occurred under circumstances raising a reasonable inference that his association with an individual with a disability, his father, was a determining factor in his discharge by Defendant.

96.     Defendant discriminated against Plaintiff because he is associated with a disabled individual.

97.     Defendant's actions were willful.

98.     The reasons given by Defendant for the misconduct toward Plaintiff and his constructive discharge were pretext to cover up unlawful motives.

99.     Plaintiff suffered tangible adverse employment actions as a result of Defendant's hostile treatment of Plaintiff, all based on Plaintiff's association with a disabled individual.

100.    As a result of Defendant's conduct, Plaintiff has incurred and will continue to incur lost wages, benefits, and other damages.

101.    Defendant's conduct has caused Plaintiff emotional distress, including but not limited to sadness, degradation, humiliation, anger, and upset.

102.    The conduct described herein would have detrimentally affected a reasonable person in Plaintiff's position.

103.     Defendant's treatment of Plaintiff was punitive in nature and was based upon Plaintiff's status as a person protected under the ADA.

104.     Supervisory and administrative level employees knew or should have known of the discrimination based on Plaintiff's association with a disabled individual but they failed to appropriately address the problem and further failed to implement effective and appropriate procedures to stop the discrimination.

105.     The actions and conduct set forth herein were outrageous and showed an evil motive, reckless indifference, or conscious disregard for the rights of Plaintiff and therefore Plaintiff is entitled to punitive damages from Defendant, to punish Defendant and to deter others from similar conduct.

106.     At all times mentioned herein, the above referenced perpetrators were supervisors, managers, agents, servant, and employees of Defendant and were at all such time acting within the course and scope of their employment, and/or their actions were expressly authorized by Defendant, thus making Defendant liable for punitive damages under the doctrine of respondeat superior.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant on Count II of this Complaint, for a finding that he was subjected to unlawful discrimination prohibited by 42 U.S.C. § 12101, *et seq*., for an award of back pay and front pay, compensatory and punitive damages, pre-judgment and post-judgment interest as provided by law, for his costs herein expended, for his reasonable attorneys' fees, and such other relief as this Court deems just and proper, including equitable relief.

<u>**COUNT III**</u>
**Gender Discrimination – Disparate Treatment – Title VII**

107.     Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

108.     Plaintiff is a male who was subjected to intentional discrimination by Defendant

because of his sex/gender.

109.     Plaintiff was subjected to disparate treatment by Defendant, including but not limited to, being subjected to unwarranted disciplinary action, denied the opportunity to take paid time off, summarily denied discretionary leave, and ultimately being given the ultimatum of resigning or being terminated (constructive discharge) based upon his gender, despite his qualifications and performance.

110.     Plaintiff was subjected to disparate treatment in that the terms and conditions of his employment were less favorable than his similarly-situated female counterparts.

111.     Plaintiff's gender was a motivating factor for Defendant's actions.

112.     Defendant's conduct was outrageous, intentional, willful, or shows an evil motive or reckless indifference or conscious disregard for Plaintiff's rights and the rights of others, and therefore Defendant is liable for punitive damages for punishment and deterrence purposes.

113.     As a result of Defendant's conduct, Plaintiff has suffered and will continue to Suffer damages, including lost wages, benefits, and other monies wrongfully taken from him, and emotional distress.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant on Count III of his Complaint, for a finding that he has been subjected to unlawful gender discrimination – disparate treatment - in violation of Title VII, for an award of compensatory and punitive damages, for his reasonable attorneys' fees, costs, pre- and post-judgment interest as allowed by law, and for such other and further relief as this Court deems just and proper, including equitable relief.

## COUNT IV
## Retaliation – Title VII

114.    Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

115.    Plaintiff opposed and reported unlawful discrimination in the workplace by bringing these issues to management and/or Human Resources, including but not limited to, reporting that he was being targeted for unwarranted workplace discipline, being denied training opportunities with management, being cut out of the work pipeline, being summarily denied FMLA, paid time off, and/or discretionary leave, and being put in the position of either resigning or facing termination (constructive discharge) based upon his gender, despite his qualifications and performance.

116.    Plaintiff's opposition to and reports of discrimination in the workplace constituted protected activities.

117.    By reason of Plaintiff's opposition and reports, Defendant retaliated against Plaintiff, by including but not limited to, being denied training opportunities with management, being cut out of the work pipeline, being summarily denied FMLA, paid time off, and/or discretionary leave, and ultimately constructively discharging Plaintiff from his employment.

118.    Plaintiff's opposition to and reports of discrimination were a motivating factor for Defendant's actions.

119.    The actions Defendant took against Plaintiff might well have persuaded a reasonable person in the same or similar circumstances of Plaintiff to not report or to not oppose workplace discrimination.

120.    Defendant would not have taken material adverse actions against Plaintiff but for Plaintiff's act of opposing and reporting unlawful discrimination in the workplace.

121.    Plaintiff's opposition to and reports of unlawful discrimination in the workplace were a determining factor in Defendant's decision to retaliate against him in the manner alleged herein.

122.    Defendant's conduct was outrageous, intentional, willful, or shows an evil motive or reckless indifference or conscious disregard for Plaintiff's rights and the rights of others, and therefore Defendant is liable for punitive damages for punishment and deterrence purposes.

123.    As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, including lost wages, benefits, and other monies wrongfully taken from him, and emotional distress.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant on Count IV of his Complaint, for a finding that he has been subjected to unlawful retaliation in violation of Title VII, for an award of compensatory and punitive damages, for his reasonable attorneys' fees, costs, pre- and post-judgment interest as allowed by law, and for such other and further relief as this Court deems just and proper, including equitable relief.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all counts of the Complaint.

## **DESIGNATION OF PLACE OF TRIAL**

Plaintiff designates the United States District Court for the District of Kansas, located in Kansas City, Kansas as the place of trial.

**HOLMAN SCHIAVONE, LLC**

By: */S/ Ashley H. Atwell - Soler*
            Ashley H. Atwell-Soler, KS # 24047
            Holman Schiavone, LLC
            4600 Madison Avenue, Suite 810

Kansas City, Missouri 64112
Phone: 816.283.8738
Fax: 816.283.8739
aatwell@hslawllc.com

**ATTORNEY FOR PLAINTIFF**